[No. D034864. Fourth Dist., Div. One. June 8, 2001.]

DANA K. FERRELL, Plaintiff and Appellant, v.
COUNTY OF SAN DIEGO, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

___

\*This opinion is ordered certified for publication with the exception of Discussion part I,
part II (A and B), part III, part IV and part V.

## COUNSEL

McKenna & Cuneo, Michael H. Fish; Marks & Golia and Davide Golia for Plaintiff and Appellant.

John J. Sansone, County Counsel, William A. Johnson, Jr., and Timothy M. Barry, Deputy County Counsel, for Defendant and Appellant.

## OPINION

**McDONALD, J.**—Dana K. Ferrell appeals a judgment awarding him damages in his inverse condemnation action against the County of San Diego (County). Ferrell contends the trial court erred by (1) excluding the testimony of his appraisal expert, and (2) not awarding him certain costs and attorney fees under Code of Civil Procedure section 1036.[1] County filed a cross-appeal and contends the trial court erred by (1) denying its motion for judgment notwithstanding the verdict (JNOV), (2) denying its alternative motion for a new trial, (3) awarding Ferrell an excessive amount of prejudgment interest, and (4) awarding Ferrell excessive costs and attorney fees under section 1036. Because there is insufficient evidence to support the jury's award of $189,078.33 in mitigation damages, we reverse the judgment to the extent it awarded those damages, and prejudgment interest on those damages, and remand with directions for the trial court to grant County's JNOV motion, award Ferrell a total of $1,890.74 in damages, and redetermine the amounts of costs, fees and prejudgment interest awarded to Ferrell.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1988 Ferrell bought two adjacent lots (Property) in Lakeside for $550,000. The Property was zoned A-70 for residential and agricultural use. It abuts Highway 67 and is in a relatively flat valley. Ninety percent of the Property is within a floodplain, which means that in the event of a 100-year flood up to 90 percent of the Property would be flooded to a depth of up to 10 feet of water.[2] There is a house on a raised one-acre pad on the Property. Ferrell bought the Property with the intent to develop it as a construction material recycling center. At the time he bought the Property, he was aware that to develop it for that intended use he must import fill dirt to raise its elevation above the floodplain elevation and construct a drainage channel.

At the time of Ferrell's purchase of the Property, Reid Enniss owned 42 acres of property that bordered the northern side of, and shared a 1,445-foot property line with, the Property. Ferrell knew that Enniss was planning to develop his property by placing fill dirt on it to raise its elevation above the floodplain elevation and constructing one-half of a drainage channel with a fill slope along its boundary with the Property. Enniss's plans were approved

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2]The phrase "100-year flood" or storm event is used to describe what happens, on average, once every 100 years and reflects a method of predicting rain or water flows.

by County.[3] Ferrell planned to create the other half of the drainage channel by raising the elevation of the Property with fill dirt, with a fill slope creating the other one-half of the drainage channel at the boundary of the Enniss property.

Enniss placed 800,000 cubic yards of fill dirt on his property, raising its elevation about 10 feet above the Property's elevation. By raising the elevation of his property, Enniss redirected the historical flow of surface water, increasing the flow of water onto the Property. However, Enniss did not grade his property in conformance with the plans approved by County. He placed the slope for one-half of a drainage channel on the Property rather than on his property.

In 1992 Ferrell filed an action alleging a trespass cause of action against Enniss and an inverse condemnation cause of action against County.[4] In 1993 Enniss and Ferrell entered into a settlement agreement (Settlement), pursuant to which Enniss paid Ferrell $60,000 and Ferrell granted Enniss an irrevocable letter of permission allowing his slope bank encroachment on the Property, and dismissed the action against him.

In the first phase of a bifurcated trial, the trial court found that County was liable to Ferrell for inverse condemnation by approving, and accepting for public use, Enniss's grading and drainage improvements that increased the flow of surface water onto the Property. In the second phase of the trial, a jury awarded Ferrell zero damages for inverse condemnation.[5] On appeal, we affirmed the trial court's finding that County was liable for inverse condemnation, but reversed the jury's award of zero damages because of instructional error. (*Ferrell v. County of San Diego* (June 17, 1998, D024043) [nonpub. opn.].) We held: "[A]t retrial, the instructions should not give the option of awarding zero damages since at a minimum an adjudicated taking supports an award of nominal damages."

On remand, a second jury trial on the issue of damages for inverse condemnation was conducted. The trial court granted Ferrell's in limine motion to exclude evidence of the Settlement. Following an Evidence Code section 402 hearing, the trial court granted County's motion to exclude the testimony of John Mawhinney, Ferrell's appraisal expert, because his expert

[3]County also apparently rezoned Enniss's property from agricultural to heavy industrial use.

[4]The second amended complaint filed on July 15, 1992, also alleged a nuisance cause of action against both Enniss and County.

[5]The jury awarded Ferrell $10,000 for emotional distress based on his nuisance cause of action against County. The trial court separately awarded Ferrell $1,889.74 in mitigation damages on his inverse condemnation cause of action.

testimony was not supported by a proper foundation. Ferrell testified that he incurred $189,078.33 in costs in unsuccessfully applying for a major use permit that would have allowed him to develop and use the Property for a construction material recycling plant; he claimed those costs were incurred to mitigate the damages caused by County's inverse condemnation of the Property. The trial court instructed the jury that it could only consider awarding Ferrell mitigation damages. The jury returned a verdict awarding Ferrell $189,078.33. The trial court denied County's motions for JNOV or, alternatively, a new trial. Ferrell filed a memorandum of costs and a motion for awards of his costs, attorney fees and prejudgment interest. County moved to tax Ferrell's requested costs and opposed Ferrell's attorney fees motion. The trial court granted in part and denied in part Ferrell's motion for costs, attorney fees and interest. It entered judgment for Ferrell and against County for a total amount of $646,132.02, consisting of: (1) $1,889.74 in stipulated damages; (2) $189,078.33 for mitigation damages awarded by the jury; (3) $6,667.08 for ordinary costs; (4) $195,956.83 in prejudgment interest; and (5) $252,540.04 for section 1036 costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees.

Ferrell timely filed a notice of appeal, and County timely filed its notice of cross-appeal.

DISCUSSION

I*

*The Trial Court Did Not Abuse Its Discretion
by Excluding Mawhinney's Testimony*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II

*The Trial Court Properly Denied Ferrell's
Requests for Section 1036 Costs and Fees*

Ferrell contends the trial court erred by denying his requests under section 1036 for (1) attorney fees incurred on the first appeal; (2) Mawhinney's fees; and (3) costs, disbursements and expenses that generally would not be allowed under section 1033.5. Section 1036 provides: "In any inverse condemnation proceeding, the court rendering judgment for the plaintiff by awarding compensation . . . shall determine and award or allow to the

---

*See footnote, *ante*, page 537.

plaintiff, as a part of that judgment . . . , a sum that will, in the opinion of the court, reimburse the plaintiff's reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of that proceeding in the trial court or in any appellate proceeding in which the plaintiff prevails on any issue in that proceeding."

A, B*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

C

■ Ferrell asserts the trial court erred by denying his section 1036 request for an award of $12,248.77 for certain costs, disbursements and expenses that generally are not considered ordinary costs under section 1033.5.[15] Ferrell's requested section 1036 costs, disbursements and expenses included mileage, postage, telephone charges, photocopying expenses, attorney service charges, meals, parking fees, certain court reporter fees, and fees paid to County's expert for deposition time. County opposed Ferrell's request, arguing that section 1036 did not provide for awards of costs that are not ordinary costs under section 1033.5. The trial court denied Ferrell's request, stating: "With respect to the 'additional disbursements' sought as part of item 11 that total $12,248.77, the court denies the request. Attachment 2 to the [Memorandum] of Costs shows that the costs include items not allowable under CCP § 1033.5 (i.e.[,] postage, [tele]phone charges, photocopying). Plaintiff cites no authority that CCP § 1036 preempts the requirements of CCP § 1033.5 as to what costs are allowable. Additionally, the costs include miscellaneous expert fees [that] are not supportable."

Ferrell asserts that section 1036 provides for awards of costs, disbursements and expenses that are not limited to ordinary costs under section 1033.5. However, he does not cite any authority that supports his position. Instead, he argues that the language of section 1036 shows that its costs provisions were intended to be broader than section 1033.5's provisions. Section 1036 provides for an award of reasonable "costs, disbursements, and expenses" incurred by a successful plaintiff in an inverse condemnation action. Ferrell argues that the Legislature would not have used the phrase "costs, disbursements, and expenses" if it had intended to limit section 1036's provisions to costs. Ferrell argues that the Legislature, by including

---

*See footnote, *ante*, page 537.

[15]The trial court granted Ferrell's separate request for an award of $6,667.08 for ordinary costs.

the additional words "disbursements" and "expenses," intended to expand the range of costs, disbursements and expenses beyond section 1033.5 ordinary costs.

We are not persuaded by Ferrell's proposed interpretation of section 1036. The word "disbursement" means funds paid out, and the word "disburse" means to expend or pay out. (Webster's 3d New Internat. Dict. (1981) p. 644.) The word "expense" is defined as cost or the financial burden involved typically in a course of action. (Webster's, *supra*, at p. 800.)[16] The word "cost" means the expenditure or outlay of money, time, or labor, and the word "costs" is defined as expenses incurred in litigation. (Webster's, *supra*, at p. 515.) Therefore, the words "disbursements" and "expenses" have meanings that are the same as, or at least substantially similar to, the word "costs." We conclude that the Legislature, by using the phrase "costs, disbursements, and expenses" in section 1036, did *not* intend that phrase to have a broader meaning than the word "costs."

Furthermore, by comparison, in an *eminent domain* action that is similar to an inverse condemnation action, a property owner also has a statutory right to recover costs incurred in defending the action. Section 1268.710 provides: "The defendants shall be allowed their costs . . . ." Before section 1268.710 was enacted in 1975, its predecessor statute, former section 1255, similarly provided for awards of costs to eminent domain defendants.[17] *People v. Bowman* (1959) 173 Cal.App.2d 416, 418 [343 P.2d 267] rejected the argument that former section 1255 allowed awards of costs other than ordinary costs: "Although [former section 1255] does not specify what items may be included in costs allowed thereunder, our courts have held that they are the same as those available in ordinary civil actions under section 1032, Code of Civil Procedure [citation], which *allows only the ordinary and usual costs* attending trials [citation] . . . ." (Italics added.) The Legislative Committee commented on section 1268.710, enacted in 1975, that: "[T]he defendant in an eminent domain proceeding has as a rule been allowed his ordinary court costs." (Legis. Com. com., 19A West's Ann. Code Civ. Proc. (1982 ed.) p. 184.) Therefore, in eminent domain proceedings, a property owner is entitled to ordinary costs under section 1032 (and its related provision § 1033.5), and not *extraordinary* costs. There appears to be no logical reason to award an inverse condemnation plaintiff broader costs than an eminent domain defendant may be awarded. We conclude that, absent an express statutory provision so stating, section 1036 does not provide for awards of

---

[16]We also note that the word "expenditure" means disbursement or expense. (Webster's 3d New Internat. Dict., *supra*, at p. 800.)

[17]Former section 1255 provided: "[C]osts may be allowed or not, and if allowed, may be apportioned between the parties on the same or adverse sides, in the discretion of the court."

costs that are not considered ordinary costs under section 1033.5. The trial court did not abuse its discretion by denying Ferrell's request under section 1036 for an award of $12,248.77 for costs, disbursements and expenses that are not ordinary costs under section 1033.5.

CROSS-APPEAL

III-V*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

The judgment is affirmed, except that the order denying the motion for judgment notwithstanding the verdict and the awards of $189,078.33 in damages for inverse condemnation and prejudgment interest thereon are reversed. The matter is remanded with directions that the trial court: (1) issue a new order granting the motion for judgment notwithstanding the verdict; (2) award the appellant a total of $1,890.74 in damages on his inverse condemnation claim; and (3) redetermine the amount of costs, fees and prejudgment interest awarded to the appellant. The parties shall bear their own costs and fees on appeal.

Kremer, P. J., and Huffman, J., concurred.

The petition of appellant Dana K. Ferrell for review by the Supreme Court was deneid September 12, 2001.

---

*See footnote, *ante*, page 537.